UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDSEY KRAMER,

    Plaintiff,

v.

PANERA LLC *d/b/a* PANERA BREAD,

    Defendant.

Case No. 16-12012
Honorable Laurie J. Michelson

## OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [16]

Suppose a restaurant is undergoing construction. As a result, the floor has a tiled area and a slightly-lower untiled area and transition between the two areas is mostly covered by a dark floor mat. Would an ordinary diner, casually inspecting the premises, have overlooked the slight drop? Deciding if a reasonable jury could answer "yes" to this question is the sole task now before the Court.

In September 2015, Lindsey Kramer, her husband, Jason Kramer, and their two kids went to a Panera Bread restaurant. (R. 16, PID 224.) The family first went to the register area to order their food. (R 17, PID 224, 239, 298, 301.) The floor in that area was tiled. (R. 16, PID 239.) Kramer and one child waited in the register area for their order to come up while her husband and other child went to get a table. (R. 16, PID 224–25.) After the food arrived, Kramer picked up the tray and started walking to the table her husband had found, taking a more-direct route to the table than the one her husband had used (he had stopped to get drinks). (R. 16, PID 224–25, 236, 238, 249.) Kramer's path took her across a dark mat covering a transition from tiled floor to untiled floor (the restaurant was under construction). (R. 16, PID 238.) As Kramer walked across

the mat she fell: "I felt under my foot the difference in flooring [a different height]. . . . My right ankle twisted. And I twisted my back and fell . . . directly onto my bent . . . left knee." (R. 16, PID 225, 239.) Jason came over and helped Kramer to their table. (R. 16, PID 249.) Later, Kramer went to urgent care and later still, had arthroscopic knee surgery and still later, filed this lawsuit against Panera LLC. (R. 16, PID 227, 231; R. 1.)

Panera asks this Court to end this case by granting it summary judgment. (R. 16.) Its only argument is that the uneven floor was "open and obvious" and so it had no duty to warn Kramer of it. (R. 16, PID 202.)

Panera has a "duty to use reasonable care to protect invitees" like Kramer "from unreasonable risks of harm posed by dangerous conditions" on its property. *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94 (Mich. 2012). But aside from a limited "special aspects" exception not now at issue, Panera has "no duty to protect or warn of dangers that are open and obvious." *Id.* This is "because such dangers, by their nature, apprise an invitee of the potential hazard, which the invitee may then take reasonable measures to avoid." *Id.* A dangerous condition is "open and obvious" if "'an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection.'" *Joyce v. Rubin*, 642 N.W.2d 360, 364 (Mich. Ct. App. 2002) (quoting *Novotney v. Burger King Corp.*, 499 N.W.2d 379, 381 (Mich. Ct. App. 1993)); *see also Hoffner*, 821 N.W.2d at 94 (citing *Joyce* and *Novotney* for test of "open and obvious"). So, at summary judgment, the question is, viewing the evidence in the light most favorable to Kramer, whether a reasonable jury could find that an ordinary diner, conducting a "casual inspection" of his surroundings as he orders food and then walks to his table, would fail to notice a slight drop in the floor covered by a mat. *See Joyce*, 642 N.W.2d at 364; Fed. R. Civ. P. 56(a). If the answer is "yes," this case goes to trial.

So what does the evidence show? Kramer testified that as she began walking with the tray toward her husband, she could not see the mat covering the tile-untiled transition due to a wall and tables. (R. 16, PID 225, 238–39.) She recalled that as she continued walking, the table left her line of sight and she could see the mat. (R. 16, PID 238.) But seeing the mat is not the same as seeing a change in floor height under the mat: "Q. Could you see the height differential as you were walking toward the black carpet? A. No. Q. Why not? A. It was covered with the carpeting and it was all one color. . . . [W]hen I stepped on the black carpet, my ankle felt the different height. Q. And you're saying you couldn't see that before you walked on it? A. Correct." (R. 16, PID 240.) And, said Kramer, if there were a photo taken from the register area, this hypothetical photo of the mat area would not show uneven flooring. (R. 16, PID 240.)

The evidence includes an actual photo of the mat area—but taken from somewhere around the Kramers' table, i.e., from a perspective almost opposite of Kramer's. The photo (see the appendix to this opinion) at best shows a subtle change in the mat's surface at the tile-to-no-tile transition—subtle enough that a jury could think an ordinary person would miss it upon a glance. And a glance at the floor was all a "casual inspection" would entail, as "[p]eople in ordinary life do not 'inspect' the ground before they walk, absent some special reason to do so, such as the presence of ice or snow. . . . [T]here is a critical difference between being aware of one's surroundings and looking down at the ground while walking." *Matteson v. Nw. Airlines, Inc.*, 495 F. App'x 689, 692 n.3 (6th Cir. 2012).

Kramer's husband also testified about whether the uneven flooring was obvious. His path to the table was different than Kramer's, so he could only speculate that she could not see the uneven floor. (*See* R. 16, PID 253.) But he could say what he saw from his perspective: "[f]rom my position taking that [photo] I could see the different floor heights." (R. 16, PID 253.) Jason's

testimony is not dispositive of the obviousness question, however, because an ordinary diner's casual inspection of the floor could have been from Kramer's perspective, not Jason's. *See Karim v. Konja*, No. 297985, 2011 WL 4634202 (Mich. Ct. App. Oct. 6, 2011) ("A hazard visible only from certain vantage points is not 'open and obvious' if the hazard could not be seen by an average person of ordinary intelligence placed in the same position as the plaintiff."); *Dyer v. Marquette Gen. Hosp., Inc.*, No. 252413, 2005 WL 1227177, at *1 (Mich. Ct. App. May 24, 2005) (finding, where two hallways formed a "T" such that the plaintiff walking down one could not see hazard cones in the other, that "[r]easonable minds could differ on the question whether the cones gave plaintiff any notice of the wet floor").

The evidence also includes testimony from a Panera employee: "I believe it was pretty obvious, the difference." (R. 17, PID 303.) But what would be obvious to an employee who presumably knows the terrain is not necessarily what is obvious to an ordinary diner. And the employee did not testify that it was obvious upon a "casual inspection." Further, even if the employee did mean to say that it was obvious both to an ordinary diner and upon casual inspection, there would still be a genuine dispute as to the "open and obvious" nature of the tiled-untiled transition given Kramer's testimony and the photo.

In all, the evidence does not establish that every reasonable jury would find that, upon a "casual inspection," an ordinary diner would have spotted the change in floor height that Kramer tripped on.

This conclusion is not contrary to any decision uncovered by the Court. There is no shortage of opinions on the openness and obviousness of hazards on floors. There are even a lot of opinions about uneven ground. The ones this Court reviewed say that steps, uneven pavement, potholes, and sunken manhole covers are most often open and obvious. *See e.g.*, *Bertrand v.*

4

*Alan Ford*, Inc., 537 N.W.2d 185, 187–88 (Mich. 1995) ("steps and differing floor levels [are] not ordinarily actionable"); *Basacchi v. Fawzi Simon, Inc.*, No. 329503, 2017 WL 188025, at *3 (Mich. Ct. App. Jan. 17, 2017) (sunken manhole cover); *Marchetto v. Kiss*, No. 270772, 2007 WL 29233, at *2 (Mich. Ct. App. Jan. 4, 2007) (uneven driveways and sidewalks). This is even true when the uneven pavement is covered by leaves, shade, or dark of night. *See Warber v. Trinity Health Corp.*, No. 239665, 2003 WL 21995502, at *2 (Mich. Ct. App. Aug. 21, 2003) (sidewalk "deeply shaded by vegetation"); *Williams v. Holiday Ventures Apartments, Inc.*, No. 296051, 2011 WL 711443, at *1 (Mich. Ct. App. Mar. 1, 2011) (leaf-covered walkway); *Basacchi*, 2017 WL 188025, at *4 (sunken manhole cover in darkness); *Pincomb v. Diversified Inv. Ventures, LLC*, No. 324989, 2016 WL 620432, at *4 (Mich. Ct. App. Feb. 16, 2016) (uneven payment in darkness). But while it may be obvious that leaves or darkness often mask uneven outdoor pavement, it is much less obvious that a mat would mask uneven indoor flooring. Or, at least, a reasonable jury could think that. *Cf. Blackwell v. Franchi*, 899 N.W.2d 415, 418 (Mich. Ct. App. 2017) (finding that a reasonable jury could find that an 8-inch step from a hallway into an unlit room was not open and obvious); *Sovis v. Hyatt Corp.*, No. 250859, 2005 WL 176974, at *2 (Mich. Ct. App. Jan. 27, 2005) (finding that tile-to-carpet transition was open and obvious where the plaintiff noticed "a piece of 'rubber cuff' running from the carpeting up to the tile" and "noticed that the tile was slightly higher than the carpeting"); *Murray v. Delta Coll.*, No. 217635, 2000 WL 33406913, at *1, 4 (Mich. Ct. App. Sept. 26, 2000) (finding that a reasonable jury could find that half-inch depressed area of an indoor floor was not an open and obvious hazard).

Panera says this case is just like *Novotney v. Burger King Corp.* and there the court found that no reasonable jury could find the hazard was not open and obvious. (R. 16, PID 210.) True,

like this case, *Novotney* involved a plaintiff unknowingly stepping from one area onto a lower area and falling. 499 N.W.2d at 380. But the lower area was a handicap access ramp connecting a parking lot to a sidewalk. *Id.* at 381–82 & n.4. The Court fails to see how that is "almost exactly the same" (R. 16, PID 210) as a mat covering the slight drop from tiled to untiled floor inside a restaurant.

Panera also stresses that after Kramer fell, both her and husband noticed the uneven flooring. (R. 16, PID 228, 235 (Kramer); R. 16, PID 253 (Jason).) So Panera says, it was obvious upon casual inspection. (*See* R. 16, PID 194, 207, 210.) But the fact that the Kramers saw the uneven flooring after the fall does not mean it was readily discoverable before the fall, for the fall may have brought attention to the hazard. *See Matteson*, 495 F. App'x at 694 ("And while all of the witnesses were able to see the substance after Matteson fell, it is not clear whether they could see the substance only because Matteson had disturbed, and called attention to, the spill by stepping in it, or because the substance was indeed easily visible.").

Panera also makes much of the fact that Jason was able to identify the uneven flooring in the photo of the mat and surrounding area. (R. 16, PID 206, 210, 253.) But a photo where the mat is the center of attention is not akin to the "casual inspection" of a diner walking to his table. And asking someone to identify a hazard in a photo likewise draws attention to it. (*See* R. 16, PID 253 ("What I'm asking is by looking at the picture you can't tell that it's uneven. Or can you?").)

In sum, a reasonable jury could find that an ordinary Panera customer ordering and then walking to the Kramer's table would not spend much time looking at the ground, and when he did, would have seen at most a subtle change in the mat's surface. In other words, a "casual inspection" of Panera's premises would not have made it plain to an ordinary person that the

6

floor was uneven—or, at least, a reasonable jury could make that finding. As such, Panera's motion for summary judgment is DENIED.

SO ORDERED.

Dated: February 20, 2018

s/Laurie J. Michelson
LAURIE J. MICHELSON
U.S. DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 20, 2018.

s/Keisha Jackson
Case Manager

Appendix



Photo on file with the Court. (*See also* R. 17, PID 305.) The caution cone was added post-fall.

.